**FILED**

**May 16, 2023**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* C.S.

**No. 22-592** (Kanawha County 22-JA-73)

**MEMORANDUM DECISION**

Petitioner Father J.S.[1] appeals the Circuit Court of Kanawha County's June 30, 2022, order terminating his parental rights to C.S.[2] Upon our review, we have determined that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In February of 2022, the DHHR filed a petition alleging that petitioner neglected and psychologically abused C.S. According to the petition, petitioner frequently belittled the child, repeatedly referring to him as "pussy" and "retard," and also telling the child he will "be nothing when he grows up" and that he should "leave and never come back." The petition further alleged that the child disclosed physical abuse by petitioner. Finally, the petition alleged that petitioner neglected the child due to substance use, citing C.S.'s disclosure that petitioner is "the most violent and aggressive when drunk" and drinks "three to four times weekly." The DHHR later amended the petition to include allegations regarding petitioner's conduct during the proceedings. Thereafter, petitioner waived the preliminary hearing.

An adjudicatory hearing was held on May 11, 2022. A DHHR worker testified that, roughly two weeks after the preliminary hearing, petitioner tested positive for amphetamines and methamphetamines and that he was then offered in-patient and out-patient treatment but declined both. Petitioner failed to respond to at least five other testing requests and tested positive for

---

[1]Petitioner appears by counsel Rebecca Stollar Johnson. The West Virginia Department of Health and Human Resources ("DHHR") appears by Attorney General Patrick Morrisey and Assistant Attorney General Heather L. Olcott. Jennifer N. Taylor appears as the child's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

methamphetamines again on April 20, 2022. The court also heard testimony from the child and petitioner, after which the circuit court adjudicated petitioner as an abusing and neglectful parent.

On May 19, 2022, less than two weeks from the adjudicatory hearing, the DHHR filed a motion to cease petitioner's services because petitioner "is uncooperative . . . and continues to send harassing text messages to service providers." The motion referenced several instances of text communications between petitioner and various DHHR workers and providers, including messages from petitioner stating the following: "I'm not participating. You guys can keep that soft ass rat kid. He doesn't deserve to have my last name"; "I'm not jumping through stipid [sic] human trick hoops taking meaningless classes that I've probably already taken"; "if he's that soft, he doesn't belong here"; and "take his bitch ass to foster care." The motion also referenced the fact that petitioner sent another DHHR worker ten harassing text messages in one day. The motion was granted on an emergency basis until the parties could convene for a hearing.

On May 31, 2022, the circuit court held a hearing to address the motion to cease services, noting that petitioner "failed to respond to the [m]otion; failed to appear at the hearing after receiving proper notice; and failed to otherwise cooperate with his counsel and the Department." Ultimately, the court granted the DHHR's motion to cease services and granted the guardian's motion prohibiting petitioner from having any contact with the child and the child's mother. The order also prohibited petitioner from speaking directly with any DHHR caseworkers and directed all communication between petitioner and the DHHR to be made through petitioner's counsel. Despite these extreme measures, the DHHR filed a petition for contempt on June 9, 2022, based on petitioner's continued harassment of DHHR workers. Three days prior to the petition's filing, petitioner was criminally charged with intimidation of a public official based on this conduct. Just two days after his criminal charge, petitioner continued harassing a DHHR worker via text. The petition also alleged that he violated the confidentiality of the proceedings by sending paragraphs of messages to a friend of the child's mother with confidential information about the case, stating, "I just wanted to let you know the quality of the individual I know you have been close to in your life."

The circuit court reconvened in this matter on June 22, 2022, for a disposition hearing. During the hearing, the DHHR presented evidence that petitioner refused to participate with the services offered and violated the court's orders by threatening DHHR personnel and sharing confidential information about the case. The court also found that petitioner's text messages "reflected anger and disrespect towards his son," which "demonstrated that he was not committed to a healthy relationship with his child, and had made no efforts to establish one." After taking testimony and evidence, the court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and ordered that terminating petitioner's parental rights to C.S. was necessary for the welfare of the child.[3] It is from this order that petitioner appeals.

---

[3]The mother's parental rights were also terminated. The permanency plan for C.S. is guardianship in his current placement.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, petitioner argues that the DHHR failed to make reasonable efforts to reunify the family. Petitioner argues that the exceptions listed in West Virginia Code § 49-4-604(c)(7) absolving the DHHR of its responsibility to make such efforts do not apply to this case; therefore, petitioner argues that the DHHR "failed to make any effort, let alone 'reasonable' efforts."

Petitioner is correct in asserting that the DHHR is required, in most circumstances, "to provide supportive services in an effort to remedy circumstances detrimental to a child." W. Va. Code § 49-4-601(d). However, it is abundantly clear from the record that any claim that the DHHR "failed to make any effort" has no merit. Here, the DHHR offered petitioner numerous services, yet petitioner not only expressly refused to cooperate with the services offered, he went so far as to harass the DHHR personnel responsible for assisting him in completing those services to the point that he was charged criminally for his conduct. The record is replete with petitioner's anger, outbursts, threats, and defiance with the DHHR workers and service providers, thus showing his refusal to participate in a reasonable plan designed to reunify the family.

Petitioner's argument that the DHHR "made no effort to attempt to accommodate" him is also without merit, as the record shows that the DHHR immediately complied with his requests for accommodation, such as changing the location of his services, only for petitioner to continue in his lack of cooperation. As the circuit court noted, petitioner simply refused to attend services, traveled out of town for extended stays without notifying workers, and, eventually, stated that he was no longer participating in certain services. Simply put, there is no basis in the record for any of petitioner's contentions that the DHHR did not make reasonable efforts to reunify the family, given that the DHHR offered extensive accommodation in the face of petitioner's openly hostile actions. As such, he is entitled to no relief.

Next, in his second and final assignment of error, petitioner argues that the circuit court erred in terminating his parental rights "when the least restrictive alternative was termination of custodial rights."[4] Petitioner's argument here is largely based on C.S.'s inability to inherit benefits from him and his unsupported assertion that terminating parental rights to a sixteen-year-old child "flies in the face of public policy." Not only is there no authority for a parent being permitted to retain their parental rights simply because of a child's advanced age, petitioner ignores the fact that C.S. being sixteen years old at the time of disposition required the court to give consideration to his wishes. *See* W. Va. Code § 49-4-604(c)(6)(C) ("[T]he court shall give consideration to the wishes of a child 14 years of age or older . . . regarding the permanent termination of parental rights."). Throughout the case and through C.S.'s own testimony, C.S. consistently expressed his fear of his father. When asked by the court if he

---

[4]Petitioner erroneously alleges that termination was inappropriate "when the least restrictive alternative had already been accomplished through relinquishment of custodial rights." There is no evidence in the record that petitioner relinquished his custodial rights to the child.

3

wanted to return to live with his father prior to turning eighteen, C.S. responded "no." Additionally, the circuit court made the findings necessary for termination of petitioner's parental rights upon ample evidence. *See* W. Va. Code § 49-4-604(c)(6) (permitting a circuit court to terminate parental rights upon finding that there is no reasonable likelihood that the conditions of neglect can be substantially corrected in the near future and when necessary for the child's welfare); *see also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected"). Accordingly, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 30, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: May 16, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn